THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

LEE WASHINGTON,    )
          )
   Plaintiff,    )
          )
v.          )  Case No. 3:15cv942-WKW-WC
          )
RUSSELL COUNTY BOARD OF  )
EDUCATION, *et al.*,    )
          )
   Defendants.   )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the court on the motions to dismiss (Docs. 9, 11, 12, 15, and 18) filed by Defendants, and the motion to strike (Doc. 25) Plaintiff's reply brief filed by Defendants Kirby, Green, Britford, and Johnston. The District Judge referred this case to the undersigned Magistrate Judge "for all pretrial proceedings and entry of any orders or recommendations as may be appropriate." Order (Doc. 3). After a review of the parties' filings and supporting materials, and for the reasons that follow, the undersigned RECOMMENDS that the motions to dismiss be granted and Plaintiff's complaint be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

On December 22, 2015, Plaintiff, proceeding *pro se*, filed his "ORIGINAL COMPLAINT OF UNLAWFUL EMPLOYMENT DISCRIMINATION" (Doc. 1).

Plaintiff purports to bring employment discrimination claims under several federal statutes, as well as a number of state law claims.  He sues fourteen different defendants, including the Russell County, Alabama, Board of Education and its members, and several other persons employed by and involved in the administration of the Russell County School District.  The material factual allegations of the complaint are as follows:

Plaintiff is an African-American male, is sixty years old, and suffers from several conditions he describes as "disabilities," including "lung inflammation (granulomas), allergies, osteoarthritis," and post-traumatic stress disorder.  Compl. (Doc. 1) at ¶¶ 3, 11, and 19.  Plaintiff was employed at Russell County High School from roughly June 2001 through September 24, 2013, during which time he served in some capacity as one of the School's Junior ROTC ("JROTC") instructors.  *Id.* at ¶ 11.  Sometime around July 22, 2013, Plaintiff began requesting that the carpet in his office be replaced and his office cleaned to alleviate "mold infestations as an accommodation for his medical condition." *Id.* at ¶ 17.  Plaintiff was told by Defendant Green that "he could not clean or pay to remove the mold and mildew." *Id.*  In addition, it is alleged that, at some point, Plaintiff "opposed the treatment of an African-American student with racial biases by Defendants[.]" *Id.* at ¶ 18.

On September 24, 2013, Plaintiff was "placed on paid administrative leave pending an investigation of an allegation made against him by the School Superintendent, Mr. William Green." *Id.* at ¶ 12.  On April 1, 2014, Plaintiff received his last pay check. *Id.* at ¶ 13.  Plaintiff did not learn of his termination until June 10, 2014, when he

received a memorandum from the Director of the United States Army's JROTC program concerning his continued JROTC certification.  *Id.* at ¶ 14.  Plaintiff was never formally notified of his termination and did not receive any report of any investigation of alleged wrongdoing by him prior to the termination of his employment and cessation of his receiving pay.[1]  However, given the timeline of events set out in Plaintiff's complaint and

---

[1]   Documents attached to Plaintiff's complaint illustrate the character of the misconduct allegations made against Plaintiff and the continuing developments concerning those accusations.  As a preliminary matter, the court may consider these documents without converting the instant motions to dismiss to motions for summary judgment because they are central to Plaintiff's claims and their authenticity is undisputed.  *See, e.g., Sheppard v. Bank of Amer., NA*, 542 F. App'x 789, 791 (11th Cir. 2013).  Likewise, the court may consider and take judicial notice of public records—like records of judicial proceedings—during the course of deciding a motion pursuant to Rule 12 without converting the motion to dismiss to a motion for summary judgment.  *See Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) (citations omitted) ("A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment.  Public records are among the permissible facts that a district court may consider.").

   The misconduct charge leveled at Plaintiff was related to Plaintiff's alleged improper contact—including alleged embracing and kissing—with one or more students in his JROTC class.  *See* Letter from Meadows to Guenster, Ex.2 to Pl.'s Compl. (Doc. 1-2) at 2.  Notably, this was not the first time Plaintiff was accused of misconduct of this nature.  *See* Compl. (Doc. 1) at ¶ 21 (referencing misconduct allegations in 2004 and 2006, for which Plaintiff was "found not guilty in the court of law"); Ex.2 to Pl.'s Compl. (Doc. 1-2) at 1-2 (describing alleged misconduct incidents in 2004, 2006, and 2007).  The conduct underlying Plaintiff's 2013 misconduct charge resulted in a criminal charge of harassment against Plaintiff.  *Id.*  The State agreed to nolle prosse the criminal charge against Plaintiff contingent upon his resigning his position and surrendering his ROTC certification.  *See* Transcript, ex.10 to Compl. (Doc. 1-11) at 2.  Although Plaintiff agreed to resign his position and surrender his certificate during the state court proceedings on March 7, 2014, *see id.*, he apparently failed to follow through with the agreement and the criminal proceedings were reinstated.

   Court records indicate that two harassment charges, with separate complaining witnesses, were brought against Defendant in the District Court of Russell County.  *See State of Alabama v. Washington*, DC-2014-605.00, and *State of Alabama v. Washington*, DC-2014-527.  In one case, DC-2014-605.00, Plaintiff's harassment charge stemmed from his alleged "placing his hand on [a female's] lower back and . . . calling her one of his 'babies' and . . . telling her that he loves her" in May of 2013.  Warrant (Doc. 1), DC-2014-605.00.  In the other harassment case, Plaintiff was charged with "attempting to kiss [a female] on the lips and . . . touching her lower back" on

attached documents, it is apparent that Plaintiff remained employed—that is, he continued to receive a paycheck while on paid administrative leave—at least until he agreed in court on March 7, 2014, to resign his position in order to avoid further criminal prosecution.

## II.   PLAINTIFF'S CLAIMS

From the above pool of allegations, Plaintiff purports to assert the following causes of action or claims under federal and state law: (1) "Falsely accused of misconduct and failure to investigate allegation (substantive due process)" (Compl. (Doc. 1) at ¶ 20); (2) "Retaliation" (*id.* at ¶ 21); (3) "Accommodation" (*id.* at ¶ 22); (4) "Breach of Contract and Agreement" (*id.* at ¶ 23); (5) "Wrongful Termination of Employment" (*id.* at ¶ 24); and (6) "Defamation of Character & Emotional Stress" (*id.* at ¶ 25). Plaintiff seeks "$5 million dollars in compensatory damages from all defendants," "$1 million dollars in damages from Defendants, for front pay and back pay for subjecting Plaintiff to constant harassment and employment discrimination," injunctive relief including restoration of his employment, prohibition of future discrimination against him, accommodation for his medical conditions, an order "enjoining the Russell County Board of Education Defendants from causing harm to employees and revoking his teaching certificates," and an "order requiring all Russell County Board of Education members and employees, including all school teachers, the assistant principals, principals, superintendent, and all

---

September 17, 2013. Warrant (Doc. 3), DC-2014-527. Plaintiff was acquitted of harassment in the 605 case (*see* Doc. 24 in DC-2014-605), but convicted in the 527 case (*see* Doc. 25 in DC-2014-527). Plaintiff has appealed his conviction to the Circuit Court of Russell County and a trial is presently set for September 12, 2016. *See* Order (Doc. 36), *State of Alabama v. Washington*, CC-2014-668 (Aug. 1, 2016).

other administrators, to undergo sensitivity training and training on how to care for teachers and students."  *Id.* at 11-12.  In addition, Plaintiff seeks punitive damages, return of certain items of personal property, and "other and further relief . . . including legal and attorney fees."[2]  *Id.* at 12.

## III.   DEFENDANTS' MOTIONS TO DISMISS

All Defendants have filed motions to dismiss, arguing that Plaintiff has failed to state claims upon which relief could be granted, and that, with respect to claims lodged by Plaintiff against the Russell County Board of Education and its members, the court "lacks subject matter jurisdiction to hear the Plaintiff's claims arising out of the purported termination of his employment with the Russell County Board of Education" because Plaintiff failed to exhaust his remedies under governing state law.  Defs.' Mot. (Doc. 11) at 6.

## IV.   STANDARD OF REVIEW

As noted above, Defendants move to dismiss Plaintiff's complaint for, *inter alia*, failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  When ruling on such a motion, "the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff."  *Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).  In order to state

---

[2]   As previously noted, Plaintiff is not represented by an attorney.

a claim upon which relief could be granted, a complaint must satisfy the pleading standard of Rule 8 of the Federal Rules of Civil Procedure.

Rule 8 requires that a plaintiff submit a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In general, then, a pleading is insufficient if it offers only mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]"  *Twombly*, 550 U.S. at 555.  *See also Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (a complaint does not suffice under Rule 8(a) "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'").  In order to survive Defendants' motions to dismiss, then, Plaintiff's complaint "'must contain sufficient factual matter, accepted as true, to 'state a claim for relief which is plausible on its face.'"  *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).  "A claim is factually plausible where the facts alleged permit the court to reasonably infer that the defendant's alleged misconduct was unlawful.  Factual allegations that are 'merely consistent with' a defendant's liability, however, are not facially plausible."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).

To the extent that any Defendant is challenging the court's subject matter jurisdiction, "Rule 12(b)(1) permits a facial or factual attack." *Willett v. United States*, 24 F. Supp. 3d 1167, 1173 (M.D. Ala. 2014).

> On a Rule 12(b)(1) facial attack, the court evaluates whether the plaintiff "has sufficiently alleged a basis of subject matter jurisdiction" in the complaint and employs standards similar to those governing Rule 12(b)(6) review. *Houston v. Marod Supermarkets, Inc*., 733 F.3d 1323, 1335 (11th Cir.2013). A Rule 12(b)(1) factual attack, however, "challenge[s] the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990) (citation and internal quotation marks omitted). When the attack is factual, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*. Therefore, "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id*.

*Id.* (footnote omitted).

Although district courts must apply a "less stringent standard" to the pleadings submitted by a *pro se* plaintiff, such "'leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action.'" *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quoting *GJR Invs., Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)).  Accordingly, Defendant's complaint, even if liberally construed, must minimally satisfy the dictates of Rule 8(a) of the Federal Rules of Civil Procedure in order to survive Defendants' motions to dismiss.

## V.     DISCUSSION

Plaintiff sues a county school board and a number of individuals and presents multiple claims premised on both state and federal laws.  The undersigned will first examine whether Plaintiff has stated any claim for relief under federal law before, if necessary, performing the same analysis as to any state law claims asserted in the complaint.

### A.     Claims alleging violations of rights protected by federal law.

#### 1.     Due Process

Plaintiff first claims that his substantive due process rights were violated because he was falsely accused of misconduct and Defendants failed to investigate the allegation against him.  Compl. (Doc. 1) at ¶ 20.  Plaintiff's due process claim, in its entirety, reads as follows:

> Plaintiff had a clearly established substantive due process right to be free from unusual punishment inflicted by Defendants, a public school under the Fourteenth Amendment.  That clearly-established right is rooted in Plaintiff's broader and fundamental liberty interest in bodily integrity, and the clearly-established right to be free from interference with that liberty interest in bodily integrity he was entitled to receive.  These Defendants failed to even notify Plaintiff of these procedural and other rights, including rights to appeal or review, as required.

> The Russell County Board of Education, its board members in both their individually [sic] and in their official capacity collectively "Defendants" and its Agents discriminated against him because of his race, age, disability, color and retaliation.

*Id.*  Unpacking Plaintiff's due process claim is difficult.  The court does not know, and Plaintiff does not explain, what is an "unusual punishment" in the context of public

school employees and the Fourteenth Amendment.  To the extent Plaintiff is somehow trying to allege that the events described in his complaint have effected a violation of his Eighth Amendment right to be free from cruel and unusual punishment, he has plainly failed to state a claim.  The court also fails to see how any of the facts alleged in the complaint could somehow constitute a violation of Plaintiff's "interest in bodily integrity."  While there is an allegation in the complaint that Defendants failed to address mold and mildew concerns raised by Plaintiff, there is no allegation that any Defendant somehow invaded or otherwise compromised Plaintiff's "bodily integrity."  Stripped of this confusing surplusage, Plaintiff's "substantive due process" claim appears to be simply that Defendants failed to notify Plaintiff of procedural rights related to his termination, and that they discriminated against him on the bases of his race, age, and disability, and that they retaliated against him when they allegedly terminated his employment.  However, Plaintiff cannot state a substantive due process claim based on these allegations.  In *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994), the Eleventh Circuit explained why public employees complaining of unlawful termination cannot state a claim for a violation of their substantive due process rights:

> The substantive component of the Due Process Clause protects those rights that are "fundamental," that is, rights that are "implicit in the concept of ordered liberty," *Palko v. Connecticut*, 302 U.S. 319, 325 (1937). The Supreme Court has deemed that most—but not all—of the rights enumerated in the Bill of Rights are fundamental; certain unenumerated rights (for instance, the penumbral right of privacy*, see Planned Parenthood v. Casey*, 505 U.S. 833 (1992)), also merit protection. It is in this framework that fundamental rights are incorporated against the states. A finding that a right merits substantive due process protection means that the right is protected "against 'certain government actions regardless of the

9

fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights*, 503 U.S. 115 (1992) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

      Although the Supreme Court has extended substantive due process protection to certain unenumerated rights, it has not extended Fourteenth Amendment coverage to a host of other areas. In fact,

> the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended. The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.

*Collins*, 503 U.S. at 125 (citation omitted). Hence, remaining largely outside the scope of substantive due process jurisprudence are tort law, *see Daniels*, 474 U.S. at 332, and public employment law, *see, e.g., Bishop v. Wood*, 426 U.S. 341, 350 (1976), and *Board of Regents v. Roth*, 408 U.S. 564, 577–78 (1972).

      In short, areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because "substantive due process rights are created only by the Constitution." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring). As a result, these state law based rights constitutionally may be rescinded so long as the elements of procedural—not substantive—due process are observed.

Hence, "pretextually terminated employees"—i.e., persons, like Plaintiff, complaining that they were terminated due to the discriminatory animus of their employer—cannot bring substantive due process claims based on their termination. *Id.* at 1560. Rather, "only procedural due process claims are available to pretextually terminated employees." *Id.*

Even construed—liberally—as a procedural due process claim, Plaintiff's claim still fails.  In order to state a claim for deprivation of his procedural due process rights, Plaintiff "must sufficiently plead three elements: (1) deprivation of a constitutionally protected interest; (2) state action; and (3) constitutionally inadequate process." *Martin v. Houston*, __ F.Supp.3d __, 2016 WL 1368109, at *13 (M.D. Ala. April 6, 2016) (citing *Arrington v. Helms*, 438 F.3d 1336, 1347 (11th Cir. 2006)).  The only deprivation of a procedural due process right arguably alluded to in the complaint is Plaintiff's allegation that "Defendants failed to even notify Plaintiff" of his purported "right to be free from interference with" his "liberty interest in bodily integrity"—a right Plaintiff describes as "procedural"—along with "rights to appeal or review, as required."  Compl. (Doc. 1) at ¶ 20.

As an initial matter, and as the above factual recitation indicates, it is not clear—despite Plaintiff's conclusory allegation otherwise—that Plaintiff was actually terminated by Defendant.  He remained on paid administrative leave until he agreed in open court to resign his position in order to dispose of criminal charges against him.  Furthermore, it is unclear why Plaintiff believes that any Defendant was required by due process to notify him of his right to be free from interference with his interest in "bodily integrity." Nonetheless, to the extent this phrasing can be seen as anything more than meaningless word salad, it still fails to state any claim for a procedural due process violation.  As the Russell County Board of Education Defendants contend, *see* Defs.' Reply (Doc. 23) at 11, Alabama law establishes the process to which public school employees are due

11

concerning the termination of their employment. *See generally* Ala. Code § 16-24C-6. Alabama law even provides a process for an employee to appeal his or her termination to an Administrative Law Judge where the employee was denied, as Plaintiff possibly appears to contend he was, a hearing before his employer prior to the termination. *See* Ala. Code § 16-24C-12. Plaintiff makes no allegation that any of the process available to him was constitutionally inadequate or even that he attempted to invoke any of these available procedural remedies. Without some allegation that the process available to him by law was inadequate, Plaintiff has failed to state a claim upon which relief could be granted for any purported violation of his procedural due process rights. Furthermore, Plaintiff cannot sustain a procedural due process claim where he did not avail himself of the procedural remedies available to him. *See Mason v. Clayton Cty. Bd. of Educ.*, 334 F. App'x 191, 193 (11th Cir. 2009).

Because Plaintiff has not stated a claim upon which relief could be granted for a violation of his substantive or procedural due process rights, Defendants' motions to dismiss Plaintiff's due process claim pursuant to Rule 12(b)(6) are due to be granted.

### 2. Retaliation

Plaintiff's next claim reads, in its entirety, as follows:

> Defendants retaliated against the Plaintiff and wrongfully terminated his employment without any basis because of past incidents when he was falsely accused of misconduct which was investigated, charged and found not guilty in the court of law in 2004 and 2006. Because Plaintiff opposed unlawful conduct of the Defendants, by allowing a teacher to use racial slurs against African-American teachers and students, and the mistreatments of African-Americans teachers and students, including Plaintiff complains about being treated less favorably than the Caucasian

> teachers.  Because Plaintiff requested accommodations to have mold and
> mildew to be removed from his office.

Compl. (Doc. 1) at ¶ 21.  Thus, as best the court can tell, Plaintiff is alleging that all Defendants retaliated against him by terminating his employment based upon prior accusations of misconduct against him, because of his opposition to perceived abuse and mistreatment of African-American students and teachers, because of his complaints about having received less favorable treatment than Caucasian teachers, and because of his request to have mold and mildew removed from his office.  As such, Plaintiff appears to be attempting to allege causes of action for retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act.

The court first considers Plaintiff's theory of Title VII retaliation.  Title VII prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).

> To state a claim for retaliation under Title VII, a plaintiff must allege the
> following elements: (1) she participated in an activity protected by Title
> VII; (2) she suffered an adverse employment action; and (3) there is a
> causal connection between the participation in the protected activity and the
> adverse action. *Pipkins v. City of Temple Terrace*, 267 F.3d 1197, 1201
> (11th Cir. 2001).

*Arafat v. Sch. Bd. of Broward Cty.*, 549 F. App'x 872, 874 (11th Cir. 2013).

With regard to any claim for retaliation under Title VII, the undersigned finds that Plaintiff has failed to state a claim upon which relief could be granted because Plaintiff's

13

allegations, at most, consist of only the sorts of labels and conclusions which, under the standard of *Twombly* and *Iqbal*, are insufficient to state a claim.  First, there are no factual allegations suggesting a causal relationship between any adverse employment action Plaintiff suffered and his "acquittal" of alleged misconduct charges in 2004 and 2006.  Nor can the court conclude that being acquitted of charges of wrongdoing is itself statutorily protected activity within the meaning of Title VII.  Second, the court cannot conclude that Plaintiff's purported "opposition" to another teacher's use of a racial slur directed at African-American teachers or students, without more, somehow constitutes opposition to an unlawful employment practice of his employer.  *See, e.g., Little v. United Techs*, 103 F.3d 956, 961 (11th Cir. 1997) (concluding, "a racially derogatory remark by a co-worker, without more, does not constitute an unlawful employment practice under the opposition clause of Title VII, . . . and opposition to such a remark, consequently, is not statutorily protected conduct").

Even if the court presumes that Plaintiff's "opposition" to another teacher's use of racial slurs, or his purported complaints—without any supporting factual detail—about being treated less favorably than Caucasian teachers, could constitute opposition to an unlawful employment practice by his employer, Plaintiff's allegations remain factually deficient.  Plaintiff is required to plead that he engaged in statutorily protected activity regarding an unlawful practice of his employer.  The most the complaint says is that Plaintiff "opposed the treatment of an African-American student with racial biases by the Defendants," and that he "opposed" Defendants' purported "mistreatments of African-

American teachers and students[.]"   Compl. (Doc. 1) at ¶¶ 18, 21.   There are no allegations detailing the treatment or "mistreatments" of African-American students or teachers, or the more favorable treatment afforded Caucasian teachers.   More importantly, there are no factual allegations as to the nature of any complaint or "opposition" raised by Plaintiff, to whom he complained or raised objections about such treatment, or even whether and how Plaintiff's employer was actually made aware of Plaintiff's complaints or "opposition."   Without allegations better clarifying how and when Plaintiff engaged in purported statutorily protected conduct, the undersigned cannot conclude that Plaintiff has sufficiently alleged a claim for retaliation.

Finally, as the documents attached to Plaintiff's complaint and the public records previously discussed make clear, any adverse action taken against Plaintiff was, without doubt, attributable to the alleged misconduct committed by Plaintiff, which has, for the time being, resulted in a criminal conviction for harassment.   While Plaintiff appears to argue that Defendants may have failed to adequately investigate this charge of misconduct, there are no facts alleged in the complaint which plausibly suggest or allow the reasonable inference that Plaintiff's termination or any other adverse action was retaliation for his vague "opposition" to perceived discrimination rather than because of the allegations of misconduct lodged against him.   As such, the court finds that Plaintiff's factual allegations with respect to this element of his claim are insufficient and, consequently, Plaintiff has failed to state a claim upon which relief could be granted for retaliation in violation of the provisions of Title VII.

15

Plaintiff also appears to be attempting to state a claim for retaliation under the ADA related to his purported request for an accommodation of his disabilities.  As summarized above, the only factual allegations related to this claim are that Plaintiff has been diagnosed with "disabilities," including "lung inflammation (granulomas), allergies, osteoarthritis, and other disorders;" that he was entitled to "accommodations for his disabilities in connection with his work," including "a clean work environment free of mold and mildew which has aggravated his medical condition;" and that, beginning on or about July 22, 2013, he "requested on numerous occasions that the carpet in his office be replaced and the room cleaned and free of mold infestations as an accommodation for his medical condition," but that when he "complained about the problem" to Defendant Green he was subsequently terminated.  Compl. (Doc. 1) at ¶¶ 11, 17.

> Like Title VII,
>
> [t]he ADA prohibits discrimination against an individual on the basis of such individual's opposition to an unlawful act under the ADA or because that individual made a charge under the ADA.  42 U.S.C. § 12203(a).  To establish a prima facie case of retaliation, [a plaintiff] must allege that "(1) [s]he engaged in a statutorily protected expression; (2) [s]he suffered an adverse employment action; and (3) there was a causal link between the adverse action and h[er] protected expression."  *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260 (11th Cir. 2001).

*Smith v. Miami-Dade Cty.*, 621 F. App'x 955, 959-60 (11th Cir. 2015).  As in the Title VII context, "statutorily protected expression" means, broadly, opposition to "any act or practice made unlawful" by the ADA.  42 U.S.C. § 12203(a).

Outside of his vague reference to July 22, 2013, Plaintiff provides no allegations respecting when he might have engaged in statutorily protected expression regarding any

purported disability.  He only alleges that, at some point not specifically referenced in the complaint, "he complained about the [mold and mildew] problem to Mr. Williams Green[,] who said he could not clean or pay to remove the mold and mildew[,]" and that he was "retaliated against subsequently and terminated."  Compl. (Doc. 1) at ¶ 17. Plaintiff does not allege that he advised Green that the alleged mold and mildew aggravated one or more of his alleged disabilities, so that Green would understand the nature of Plaintiff's complaint.  Nothing in the complaint permits the reasonable inference that Plaintiff did anything more than request that Green address Plaintiff's concerns about mold and mildew.  More is required to sufficiently allege that, indeed, Plaintiff engaged in statutorily protected activity within the meaning of the ADA.

Even if Plaintiff could point to a specific event as some form of statutorily protected activity, his allegations are insufficient to show that such activity might plausibly have caused the adverse action about which he complains.  First, there is no allegation that Plaintiff's employer, the Russell County School Board, as the entity responsible for the alleged termination of Plaintiff's employment, even knew of Plaintiff's request that Green remediate the mold and mildew in Plaintiff's office. Second, given the allegations of misconduct against Plaintiff, which, again, have resulted in Plaintiff's conviction for harassment, it is simply implausible to allege that Plaintiff's purported termination is related to his vague complaint about mold or mildew on some unspecified date months before Plaintiff was charged with misconduct and placed on paid administrative leave, and some ten months before Plaintiff received his final paycheck.

*See, e.g., Albra v. City of Fort Lauderdale*, 232 F. App'x 885, 889 (11th Cir. 2007) (finding that plaintiff failed to state a plausible claim of retaliation under the ADA where, based upon the record, the "alleged retaliatory actions seem wholly unrelated to any action [plaintiff] may have taken in opposition to allegedly unlawful actions on the part of [defendant]"). The complaint provides no factual allegations permitting any reasonable inference that any adverse action against Plaintiff was caused by his request to have his office cleaned. As such, the undersigned finds that Plaintiff's allegations of retaliation under the ADA are precisely the sort of speculative and implausible allegations which are insufficient to state a claim under *Iqbal* and *Twombly*.

### 3.    Accommodation

Plaintiff's next claim reads as follows: "'Washington'. The Plaintiff because of his disabilities, by refusing or failing to reasonably accommodate his disabilities in the provision of his employment, educational services, such that he did not receive the same employment protection as non-disabled employee, in violation of the ADA and the Rehabilitation Act of 1973." Compl. (Doc. 1) at ¶ 22. It thus appears that Plaintiff purports to state a claim for failure to accommodate under both the ADA and the Rehabilitation Act of 1973.

The ADA prohibits discrimination in employment on the basis of an employee's disability. Discrimination may include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee[.]" 42 U.S.C. § 12112(b)(5)(A).

> To state a prima facie claim for failure to accommodate under the ADA, a plaintiff must show that: (1) he is disabled; (2) he is a qualified individual, meaning able to perform the essential functions of the job; and (3) he was discriminated against because of his disability by way of the defendant's failure to provide a reasonable accommodation.

*Russell v. City of Tampa*, __ F. App'x __, 2016 WL 3181385, at *2 (11th Cir. June 8, 2016) (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001)). Hence, "[i]n order to establish a claim under the ADA, a plaintiff must allege a disability." *Chapman v. U.S. Postal Serv.*, 442 F. App'x 480, 484 (11th Cir. 2011). Under the ADA, a "disability" is "a physical or mental impairment that substantially limits one or more major life activities of [the] individual," "a record of such an impairment," or "being regarded as having such an impairment."   42 U.S.C. § 12102(1)(A)-(C).

Plaintiff's complaint alleges that he suffers the "disabilities of lung inflammation (granulomas), allergies, osteoarthritis, and other disorders[,]" and the only possible "failure to accommodate" detailed in the complaint is the purported failure to address his complaints about mold and mildew in his office, which, it is alleged, "aggravated his [unspecified] medical condition."   Compl. (Doc. 1) at ¶ 11.   Under the prevailing *Twombly/Iqbal* standard, it is not sufficient to merely allege that Plaintiff has a disability. *Chapman*, 442 F. App'x at 485.   Rather, Plaintiff must allege sufficient, plausible facts showing that Plaintiff is indeed disabled.   Plaintiff has not alleged any facts which would permit the reasonable inference that any of the "disabilities" referenced in the complaint—lung inflammation, allergies, osteoarthritis, or other unspecified

19

"disorders"—substantially limit one or more of his major life activities, he has not provided records of any such impairment with the complaint, and he has not alleged any facts establishing that he is regarded as having any such impairment. *See, e.g., D'Angelo v. ConAgra Foods*, 422 F.3d 1220, 1228 (11th Cir. 2005). As such, Plaintiff has not sufficiently alleged that he is disabled. *See Chapman*, 442 F. App'x at 485. In addition, Plaintiff further fails to allege any facts plausibly showing that Defendant failed to reasonably accommodate his purported disability. There are no allegations—outside Plaintiff's unsubstantiated speculation—plausibly showing that Defendant's alleged failure to address Plaintiff's concerns regarding mold and mildew in his office had any effect on any of Plaintiff's purported disabilities. In other words, Plaintiff's mere allegation that he was entitled to an accommodation in the form of mold and mildew removal because it "aggravated his [unspecified] medical condition," Compl. (Doc. 1) at ¶ 11, is insufficient to establish a nexus between any purported disability of Plaintiff's and the alleged discrimination by Defendants. Accordingly, Plaintiff has failed to sufficiently allege a claim for failure to accommodate under the ADA.

Plaintiff also purports to assert a claim for failure to accommodate under the Rehabilitation Act of 1973. In general, "[t]he federal Rehabilitation Act prohibits employers from discriminating against disabled persons." *Jackson v. Agency for Persons with Disabilities Florida*, 608 F. App'x 740, 741 (11th Cir. 2015) (citing 29 U.S.C. § 794(a)). "Discrimination claims brought under the Rehabilitation Act are governed by the same standard as claims brought under the [ADA]." *Id.* Thus, as with Plaintiff's

ADA failure-to-accommodate claim, in order to state a claim under the Rehabilitation Act, Plaintiff must allege

> "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability."

*Royal v. Reese*, 24 F.Supp.3d 1243, 1246-47 (N.D. Ga. 2014) (quoting *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007)).

As discussed above, the undersigned concludes that Plaintiff has failed to sufficiently allege that he is disabled within the meaning of relevant federal laws, and that, even if he had, he has not pled sufficient factual detail permitting the reasonable inference that he was discriminated against because of his purported disability. Accordingly, Plaintiff has failed to state any claim for a violation of the Rehabilitation Act upon which relief could be granted.

### 4.   "Wrongfully [sic] Termination of Employment"

The final arguably federal law cause of action brought by Plaintiff is his claim that he was "wrongfully terminated for no cause[.]"  Compl. (Doc. 1) at ¶ 24.  Although the undersigned knows of no federal law claim based upon an alleged "wrongful termination," Plaintiff's allegations suggest he intends to assert a claim for discriminatory discharge under Title VII.  *See id.* (alleging Plaintiff was terminated "based on . . . discrimination and harassment, and the reasons provided by the Defendants were a pretext of discrimination").  In support of this claim of discriminatory discharge, Plaintiff

alleges a number of factual circumstances, including, in relevant part, the following: (1) that he was falsely accused of "sexually assaulting students without investigation and finding him guilty of the offense;" (2) that he was treated "less favorably than other non-black teachers in similarly [sic] situations who have also been alleged to have committed similar offense and continues to be employed by the defendants;" and (3) that he was falsely accused of "having harassing communication with students without investigating and finding him guilty of the offense[.]" *Id.* Elsewhere in the complaint, Plaintiff alleges that "Pete Helms (White), younger in age who is also an instructor (teacher) who has been charged at least twice for allegations of sexual misconduct, and other teachers in similarly situated conditions were allowed to remain as a teacher and continued to be employed by the Defendants." *Id.* at ¶ 12. From all of the above, the undersigned gathers that Plaintiff is alleging that he was terminated on the basis of his race, and that the reasons for his termination proffered by his employer are a pretext for unlawful discrimination because his employer failed to adequately investigate the misconduct charges against him and because similarly situated white faculty members have received more favorable treatment than did he.

"Under Title VII, it is unlawful for an employer to discharge or discriminate against any individual on the basis of his race, gender, or national origin." *Patel v. Georgia Dep't BHDD*, 485 F. App'x 982, 983 (11th Cir. 2012) (citing 42 U.S.C. § 2000e-2(a)(1)). In order to state a Title VII discrimination claim for which relief could be granted, Plaintiff must allege sufficient factual information that, accepted as true,

suggests that his claim that he was terminated because of his race is more than just speculation on his part. *See Davis v. Coca-Cola Bottling Co. Consol*, 516 F.3d 955, 974 (11th Cir. 2008) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)) ("Although a Title VII complaint need not allege fact sufficient to make out a classic *McDonnell Douglas* prima facie case, . . . it must provide 'enough factual matter (taken as true) to suggest' intentional race discrimination."). Under the prevailing *Twombly/Iqbal* standard,

> even if well-pled allegations are "consistent" with a defendant having subjected a plaintiff to adverse treatment for an unlawful reason, a complaint nonetheless is subject to dismissal for failure to state a claim where a discriminatory motive "is not a plausible conclusion" given an "obvious alternative explanation" that would render the defendant's objective conduct lawful. *Iqbal*, 556 U.S. at 681–82; *see also Twombly*, 550 U.S. at 567. In such circumstances, a plaintiff must "allege more by way of factual content to 'nudge' his claim of purposeful discrimination 'across the line from conceivable to plausible.'" *Id.*, 556 U.S. at 683 (quoting *Twombly*, 550 U.S. at 570).

*Heard v. Hannah*, 51 F. Supp. 3d 1129, 1143 (N.D. Ala. 2014).

Defendant Russell County Board of Education and the individual board members argue that Plaintiff has failed to state a viable Title VII discrimination claim because "[n]one of the Plaintiff's allegations show that any alleged action taken by the Defendants were done so because of his race[.]" Defs.' Mot. (Doc. 11) at 4. They contend that Plaintiff "does not allege facts to support that he was a member of a protected class or qualified for the position he held with the Russell County Board of Education[,]" and that Plaintiff's allegations respecting a purported comparator, Pete Helms, are deficient because he does not "assert how the Defendants treated Mr. Helms

23

more favorably[,]" or "how Mr. Helms is an adequate comparator" to Plaintiff for purposes of his Title VII racial discrimination claim.  Defs.' Reply (Doc. 23) at 2-3.

The undersigned concludes that Plaintiff has failed to state a plausible claim for discrimination under Title VII for which relief could be granted.  To be sure, Plaintiff's allegations with respect to this claim tread closer to stating a viable claim for relief than any of his other federal claims because of his allegation respecting the supposedly favorable treatment afforded to Mr. Helms.  *See, e.g., Watts v. Ford Motor Co.*, 519 F. App'x 584, 587 (11th Cir. 2013) (reversing district court's judgment that Title VII plaintiff failed to state a claim upon which relief could be granted where Plaintiff alleged, *inter alia*, that her employer specifically targeted her for diminished performance review because of her race, thereby exposing her to a new reduction-in-force initiative despite the fact that she performed her job better than a named white employee with less seniority).    However, for the reasons that follow, notwithstanding Plaintiff's allegation respecting Mr. Helms, the factual allegations Plaintiff has proffered in support of this claim are not sufficient to "'nudge' his claim of purposeful discrimination 'across the line from conceivable to plausible.'"  *Iqbal*, 556 U.S. at 683 (quoting *Twombly*, 550 U.S. at 570).  This is so because, stripped of Plaintiff's unwarranted legal conclusions and fanciful charges of a conspiratorial effort by all named Defendants (including Board of Education members, the Superintendent, school administrators, and minor students) to fabricate misconduct charges against Plaintiff, fail to adequately investigate the fabricated charges, and then terminate Plaintiff's employment based upon the results of

the inadequate investigation into the fabricated charges, Plaintiff's claim is simple and, ultimately, is deficient.[3]

In essence, Plaintiff alleges only that he was terminated because of his race and that Pete Helms and other unnamed white "teachers in similarly situated conditions were allowed to remain as a teacher and continued to be employed by the Defendants." Compl. (Doc. 1) at ¶ 12. Most importantly, the complaint is devoid of allegations respecting any act or conduct demonstrating racial animus against Plaintiff by any person, whether a named Defendant or otherwise. To the extent Plaintiff alleges he was treated less favorably than "non-black teachers in similarly [sic] situations who have also been alleged to have committed similar offense and continues to be employed by the defendants," Compl. (Doc. 1) at ¶ 24, it is not sufficient to allege broadly that other, unnamed employees outside Plaintiff's protected class received more favorable

---

[3]   In terms more direct than Plaintiff's complaint, Plaintiff's response in opposition to the motions to dismiss makes clear that, at its core, Plaintiff's complaint is about a purported conspiracy by all Defendants to effectuate his termination supposedly due to some discriminatory animus. *See* Pl.'s Opp. (Doc. 20) at 9 (describing actors and goal of conspiracy); *id.* at 13 (chart showing same). However, in addition to lacking any allegations demonstrating any actual racial or other discriminatory animus by any Defendant, the complaint, and even Plaintiff's response, are completely devoid of cogent factual allegations about the conspiracy which would permit the court to reasonably infer that such a conspiracy existed. There are no allegations respecting any specific, discrete action by any Defendant in organizing or furthering any such conspiracy. Rather, Plaintiff merely alleges the existence of a wide-ranging conspiracy with a number of Defendants and a singular objective. Such conclusory, vague, and general allegations of conspiracy are insufficient to state a claim. *See, e.g., Twombly*, 550 U.S. at 556-57 ("[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.").

treatment.[4]  *See Uppal v. Hosp. Corp. of Am.*, 482 F. App'x 394, 396 (2012); *Davis*, 516 F.3d at 974.  Thus, apart from Plaintiff's allegation respecting Mr. Helms, there simply is no well-pled factual allegation that is both free of unwarranted legal conclusions and tends to show that Plaintiff's racial discrimination claim is anything more than wild speculation on Plaintiff's part.

Insofar as Plaintiff does allege that a specific white individual, Mr. Helms, received more favorable treatment than he, his claim still falls short.  First, merely naming a purported comparator outside of Plaintiff's protected class is not, alone, sufficient to state a Title VII discrimination claim.  *See, e.g., McCray v. Auburn Univ.*

---

[4]   Documents attached to Plaintiff's complaint provide marginally more information about the other supposed comparators referenced, but not identified, in Plaintiff's complaint.  However, to the extent these documents should be considered part of the complaint, *see Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215-16 (11th Cir. 2012), upon review, they should not change the court's analysis.  Plaintiff attached to the complaint a letter he wrote to the EEOC on December 22, 2014, in response to a letter he received from the EEOC to provide additional information or documentation in support of his claims.  *See* Ex. 5 (Doc. 1-5).  In that letter, Plaintiff asserts that a white "female History teacher named Ms. Melissa Cook had inappropriate contact with male students on more than one occasion and nothing was done to her."  *Id.* at 3.  However, there is no allegation that Ms. Cook's alleged "inappropriate contact" was similar to that alleged against Plaintiff, or that Ms. Cook was criminally investigated and charged for her alleged misconduct, or even that Plaintiff's employer or anyone else in a position of authority was aware of or investigated Ms. Cook's alleged actions.

Plaintiff's letter also states that a white "male Technology teacher named Mr. Shawn Taylor has had a series of issues as a teacher ranging from abusing a 'Black' student . . . to causing domestic disturbance with a spouse.  Mr. Taylor caused physical body harm/injuries to [the black student] after choking him and throwing him down on a hard surface brick floor (caught on tape)."  *Id.*  Plaintiff does not allege that Mr. Taylor has allegedly committed multiple such instances of "abuse" and does not allege that Mr. Taylor was criminally investigated and charged for his actions.  More importantly, it is apparent that Mr. Taylor was not accused of inappropriate contact of a sexually harassing nature.  As such, the undersigned cannot conclude that Plaintiff has sufficiently alleged that any white persons, outside Mr. Helms, received more favorable treatment than did he.

*Montgomery*, Civ. No. 2:11-cv-714-WHA, 2011 WL 6140993, at *4 (M.D. Ala. Dec. 8, 2011).  Rather, because merely alleging that a particular person is "similarly situated" is a legal conclusion, Plaintiff must allege sufficient plausible factual details permitting the reasonable inference that the purported comparator is indeed similarly situated.  Here, Plaintiff fails to allege the character and content of the misconduct charges allegedly leveled against Mr. Helms, whether and how the charges were investigated and adjudicated, whether Mr. Helms was also subject to criminal prosecution for his alleged misconduct and was indeed so prosecuted, whether Mr. Helms also agreed to resign his position in a state criminal court, and whether and how Mr. Helms ultimately was punished by their mutual employer.[5]  Accordingly, the complaint lacks sufficient detail to reasonably conclude that Plaintiff and Mr. Helms similarly situated.  Because the complaint is entirely devoid of any other factual allegation making plausible Plaintiff's claim that he was terminated because of his race, the undersigned cannot conclude that Plaintiff has adequately stated a Title VII claim for racial discrimination which satisfies the applicable *Twombly/Iqbal* standard.

Finally, as the court has discussed in conjunction with Plaintiff's other claims, Plaintiff's complaint makes clear what is the real reason for any adverse employment action about which he complains: Plaintiff was subject to employment discipline, and indeed was subject to criminal prosecution, because of his alleged improper interactions

---

[5]  Plaintiff's letter to the EEOC appears to allege some attempt by Defendant Green to conceal the nature of Mr. Helms's alleged misconduct.  *See* Doc. 1-6 at 3.  However, Plaintiff's charge in this regard is conclusory and, in any event, there are no additional allegations respecting the misconduct allegations against Mr. Helms or that law enforcement authorities actually determined that Mr. Helms should be criminally charged for any improper contact with students.

with students.   Moreover, there is nothing in the complaint which makes plausible Plaintiff's apparent charge that the misconduct allegations themselves were the product of a wide-ranging conspiracy against Plaintiff based on racial or other discriminatory animus.  Where the complaint makes clear that, rather than discriminatory animus, there is an "'obvious alternative explanation,'" *Heard*, 51 F. Supp. 3d at 1143 (quoting *Iqbal*, 556 U.S. at 682), for the alleged adverse employment action—even if presumed incorrect or untrue—and that such "obvious alternative explanation" is indeed the only plausible explanation permitted by the complaint, the court is justified in concluding that a Title VII plaintiff has failed to state a claim.  *See, e.g., Glover v. Donahoe*, 626 F. App'x 926, 931 (11th Cir. 2015) (emphasis in original) (upholding district court's order dismissing complaint for failure to state a claim because, "[v]iewing the factual allegations in the amended complaint in the light most favorable to Glover, the USPS terminated Glover's employment based on false accusations by a black woman and a black witness that Glover used a racial slur and other offensive language while Glover was delivering mail. In other words, Glover's employment was terminated because of a customer complaint about Glover's conduct, *not* because of Glover's race."); *Heard*, 51 F. Supp. 3d at 1143-44 (citing *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1363 n.3 (11th Cir. 1999)) (dismissing Title VII race discrimination claim for failure to state a claim because "the Amended Complaint and the materials attached thereto also suggest that Hannah fired Plaintiff based upon an investigation revealing that he had been accused by multiple, identified women of making threats designed to coerce them into supplying

sexual favors to avoid arrest or to receive more favorable treatment while in custody[,]" and finding that Plaintiff's contention that the alleged misconduct was "'false,'" "'unfounded,'" and "'non-verified,'" was irrelevant to question of whether Plaintiff had stated a claim for discrimination).

For all of the foregoing reasons, the undersigned concludes finds that Plaintiff has failed to state a claim for discriminatory discharge in violation of Title VII for which relief could be granted.   As such, Defendants are entitled to dismissal of the claim pursuant to Rule 12(b)(6).

### B.   Claims Predicated on Violations of State Law

In addition to his claims premised on violations of federal law, Plaintiff purports to bring several claims alleging violations of state law by Defendants, including "Breach of Contract and Agreement," *see* Compl. (Doc. 1) at ¶ 23, and "Defamation of Character & Emotional Stress," *id.* at ¶ 25.  Defendants argue that Plaintiff's state law claims should be dismissed for failure to state a claim upon which relief could be granted.  While it appears that Plaintiff's state law claims are likely encumbered with the same pleading deficiencies afflicting his federal claims, the undersigned believes that, because all of Plaintiff's federal law claims are subject to dismissal for failure to state a claim upon which relief could be granted, this court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).  *See Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (encouraging "district courts to dismiss any remaining state claims when . . . the federal claims have been

dismissed prior to trial.").  Accordingly, Plaintiff's state law claims should be dismissed without prejudice.

## IV.   CONCLUSION

For all of the reasons stated above, the Magistrate Judge RECOMMENDS as follows:

a.     that Defendants' Motions to Dismiss (Docs. 9, 11, 12, 15, and 18) be GRANTED to the extent such motions seek dismissal of Plaintiff's federal law claims pursuant to Rule 12(b)(6) due to Plaintiff's failure to state any claim upon which relief could be granted;

b.     that Plaintiff's state law claims be DISMISSED without prejudice pursuant to 28 U.S.C. §1367(c)(3); and

c.     that Defendants' Motion to Strike Plaintiff's Reply Brief (Doc. 25) be DENIED as moot.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **September 14, 2016**.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the

Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1; *see Stein v. Lanning Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*).  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

      Done this 31st day of August, 2016.


                    /s/ Wallace Capel, Jr.
                    UNITED STATES MAGISTRATE JUDGE