THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

LEE WASHINGTON,      )
                               )
       Plaintiff,        )
                               )
v.                         )     Case No. 3:15cv942-WKW-WC
                               )
RUSSELL COUNTY BOARD OF     )
EDUCATION, *et al.*,       )
                               )
       Defendants.      )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the court on the renewed motions to dismiss (Docs. 50 and 53) filed by Defendants.  The District Judge referred this case to the undersigned Magistrate Judge "for all pretrial proceedings and entry of any orders or recommendations as may be appropriate."  Order (Doc. 3).  After a review of the parties' filings and supporting materials, and for the reasons that follow, the undersigned RECOMMENDS that the motions to dismiss be granted and Plaintiff's Amended Complaint (Doc. 49) be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**I.**    **BACKGROUND**

On December 22, 2015, Plaintiff, proceeding *pro se*, filed his "ORIGINAL COMPLAINT OF UNLAWFUL EMPLOYMENT DISCRIMINATION" (Doc. 1). Plaintiff purported to bring employment discrimination claims under several federal

statutes, and asserted s well as a number of state law claims.  He sued fourteen different defendants, including the Russell County, Alabama, Board of Education and its individual members, and several other persons employed by and involved in the administration of the Russell County School District.

On August 31, 2016, the undersigned issued a Recommendation finding that Plaintiff had failed to state any claim upon which relief could be granted, and therefore recommending that Defendants' initial motions to dismiss be granted.  Doc. 46.  Thereafter, in response, Plaintiff filed his "Motion for Leave to File Amended Complaint, Motion to Stay Magistrate Recommendation and Memorandum of Law in Support."  Doc. 47.  On September 22, 2016, the District Judge entered an Order (Doc. 48) granting Plaintiff's request for leave to amend his complaint.  Plaintiff filed his Amended Complaint (Doc. 49) on October 7, 2017, and Defendants thereafter filed the instant renewed motions to dismiss.

The Amended Complaint again purports to allege claims for relief under federal and state laws against the Russell County Board of Education ("RCBOE"), its individual members, and several employees and/or administrators of the Russell County School District, including the District Superintendent, the Principal of Russell County High School ("RCHS"), and two Assistant Principals at the high school.  The relevant, well-pleaded factual allegations of the Amended Complaint are as follows: Plaintiff "has been diagnosed with lung inflammation (granulomas), allergies, osteoarthritis, and post-traumatic stress disorder."  Doc. 49 at ¶ 19.  He is prescribed medications for his "ailments," and he requires "a clean work environment that is free of mold and mildew that aggravate his medical

2

condition." *Id.*  Plaintiff was hired by Russell County Board of Education in June of 2001 as an Instructor in the District's Junior Reserve Officer Training Corps Program ("JROTC"). *Id.* at ¶ 20.  The United States Army paid half of Plaintiff's salary as a JROTC Instructor. *Id.*

Plaintiff was accused of sexual misconduct involving students at RCHS in both 2004 and 2006. *Id.* at ¶ 66.  He faced criminal charges for this conduct, but in the 2004 case, after further investigation, no action was taken against him and, in the 2006 case, he was acquitted in the Russell County District Court. *Id.*  Beginning in July of 2013, Plaintiff began requesting that "the carpet in his office . . . be replaced and the room cleaned of mold and mildew[.]" *Id.* at ¶ 21.  On September 23, 2013, a parent of a student at Russell County High School approached Plaintiff in his office and advised him of "a plan or conspiracy by female students to accuse Plaintiff of harassment and to report him to the School's administrators." *Id.* at ¶ 23.  The parent's child "was solicited by unnamed students to make the accusations of harassment against Plaintiff." *Id.*  "The following day, September 24, 2013, Defendant Green, Superintendent of the Russell County School System, placed Plaintiff on paid administrative leave pending an investigation into unspecified allegations that had been made against him by unnamed students." *Id.* at ¶ 24.  Green never submitted a report of any investigation into the allegations to Plaintiff. *Id.* at ¶ 25.  On September 30, 2013, Green "caused WTVM, a Columbus, Georgia, local television station, to post a news article on its website alleging that Plaintiff had engaged in inappropriate behavior with a student." *Id.* at ¶ 26.  In the following months, on October 1, 2013, March 20, 2014, and

March 31, 2014, Plaintiff was arrested by personnel from the Russell County Sheriff's Office on charges of "harassing communication" based upon different student complaints. *Id.* at ¶¶ 27-29.

Plaintiff received his final paycheck from the Russell County Board of Education on April 1, 2014. *Id.* at ¶ 30. "On June 10, 2014, Plaintiff learned from a letter he received from the Director of the Army JROTC and communications from the Equal Employment Opportunity Commission (EEOC) that his employment had been terminated by the RCBOE as of June 1, 2014. Defendant RCBOE, its Superintendent, and the Principal of RCHS did not inform Plaintiff of such employment termination." *Id.* at ¶ 31. Although Plaintiff was initially convicted in the Russell County District Court on one of the criminal charges against him, on appeal to the Russell County Circuit Court he was acquitted after a jury trial on September 15, 2016. *Id.* at ¶ 32.[1]

---

[1] Plaintiff's Amended Complaint omits some pertinent factual allegations that are part of the record due to Plaintiff's inclusion of supporting documents with his original complaint. For instance, a transcript of state court criminal proceedings that Plaintiff attached to his original complaint sheds light on Plaintiff's allegation that he was terminated by the RCBOE. The court may consider the transcript without converting the instant motions to dismiss to motions for summary judgment because it is central to Plaintiff's claims and its authenticity is undisputed. *See, e.g., Sheppard v. Bank of Amer., NA*, 542 F. App'x 789, 791 (11th Cir. 2013). Likewise, the court may consider and take judicial notice of public records—like records of judicial proceedings—during the course of deciding a motion pursuant to Rule 12 without converting the motion to dismiss to a motion for summary judgment. *See Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) (citations omitted) ("A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment. Public records are among the permissible facts that a district court may consider."). The transcript reveals that the State agreed to *nolle prosse* the criminal harassment charge against Plaintiff contingent upon his resigning his position and surrendering his ROTC certification. *See* Transcript, ex.10 to Compl. (Doc. 1-11) at 2. Although Plaintiff agreed to resign his position and surrender his certificate during the state court proceedings on March 7, 2014, *see id.*, he apparently failed to follow through with the agreement and the criminal proceedings were reinstated, leading ultimately to the criminal dispositions described by Plaintiff in the Amended Complaint.

## II.    PLAINTIFF'S CLAIMS

From the above pool of factual allegations, Plaintiff purports to bring several federal and state law claims for relief, including the following: a) unlawful discrimination under the Americans with Disabilities Act for failure to accommodate his disability (Count I); b) failure to accommodate his disability in violation of the Rehabilitation Act of 1973 (Count II); c) unlawful age-based discrimination in violation of the Age Discrimination in Employment Act (Count III); d) unlawful race-based employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Count IV); e) breach of his employment contract (Count V); f) retaliation in violation of Title VII and the Rehabilitation Act of 1973 (Count VI); g) due process violations flowing from his alleged termination by RCBOE (Count VII); h) defamation (Count VIII); i) malicious prosecution and abuse of process (Count IX); and j) intentional infliction of emotional distress (Count X).  Doc. 49 at ¶¶ 33-93.

## III.   DEFENDANTS' MOTIONS TO DISMISS

All Defendants move to dismiss the Amended Complaint, arguing that Plaintiff has failed to state any claims upon which relief could be granted (*see* Docs. 50 and 53), and that, with respect to claims lodged by Plaintiff against the Russell County Board of Education and its members, the court "lacks subject matter jurisdiction to hear the Plaintiff's claims arising out of the purported termination of his employment with the Russell County Board of Education" because Plaintiff failed to exhaust his remedies under governing state law (*see* Doc. 50 at 6).

## IV.    STANDARD OF REVIEW

As noted previously, Defendants move to dismiss the Amended Complaint for failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  "In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, but [l]egal conclusions without adequate factual support are entitled to no assumption of truth."  *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (quotations and citations omitted).  In order to state a claim upon which relief could be granted, a complaint must satisfy the pleading standard of Rule 8 of the Federal Rules of Civil Procedure.

Rule 8 requires that a plaintiff submit a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In application, the Rule requires that a plaintiff plead "enough facts to state a claim to relief that is plausible on its face," in that the well-pleaded factual matter in the complaint "nudge[s] [the plaintiff's] claims across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  Accordingly, the court may "insist upon some specificity in [the] pleading before allowing" the complaint to survive a motion to dismiss.  *Twombly*, 550 U.S. at 558.

6

To adequately state a claim under Rule 8(a) and survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (citations omitted). Thus, a pleading is insufficient if it offers only mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Twombly*, 550 U.S. at 555. *See also Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (a complaint does not suffice under Rule 8(a) "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"). In other words, in order to survive a motion pursuant to Rule 12(b)(6), "a plaintiff [must] include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org., Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012).

In assessing the sufficiency of the complaint, a reviewing court is to look at the complaint as a whole, considering whether all of the facts alleged raise a claim that is plausible on its face. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1382 (11th Cir. 2010). Thus, the court reads the complaint "holistically," taking into account all relevant context. *El-Saba v. Univ. of S. Ala.*, Civ. No. 15-00087-KD-N, 2015 WL 5849747, at *15 (S.D. Ala. Sept. 22, 2015) (citing *Garayalde-Rios v. Municipality of Carolina*, 747 F.3d 15, 25 (1st Cir. 2014)). As

7

such, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

To the extent that any Defendant is challenging the court's subject matter jurisdiction, "Rule 12(b)(1) permits a facial or factual attack." *Willett v. United States*, 24 F. Supp. 3d 1167, 1173 (M.D. Ala. 2014).

> On a Rule 12(b)(1) facial attack, the court evaluates whether the plaintiff "has sufficiently alleged a basis of subject matter jurisdiction" in the complaint and employs standards similar to those governing Rule 12(b)(6) review. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir.2013). A Rule 12(b)(1) factual attack, however, "challenge[s] the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990) (citation and internal quotation marks omitted). When the attack is factual, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*. Therefore, "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id*.

> *Id.* (footnote omitted).

Although district courts must apply a "less stringent standard" to the pleadings submitted by a *pro se* plaintiff, such "'leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action.'" *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quoting *GJR Invs., Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)). Accordingly, even as a *pro se* litigant, Plaintiff is obliged to provide sufficient factual detail in his complaint to support his claims, and the court is not permitted to sustain a facially

8

deficient complaint in light of his *pro se* status. This is especially so considering that the court has already issued orders extensively describing the pleading deficiencies plaguing Plaintiff's original complaint. Furthermore, although Plaintiff filed his Amended Complaint *pro se*, counsel has since entered his appearance on behalf of Plaintiff and has filed a response in opposition to the motions to dismiss that repeatedly argues that Plaintiff's claims are sufficiently pleaded. *See, e.g.,* Doc. 59 at 9-12. Counsel has not sought leave to file a second amended complaint addressing the concerns raised in the undersigned's prior Recommendation or in the instant motions to dismiss. As such, the Amended Complaint minimally carries the tacit imprimatur of Plaintiff's retained counsel and, therefore, should not be "liberally" or "broadly" construed as the court would an ordinary *pro se* pleading.

## V.   DISCUSSION

At the outset, the undersigned offers the following observations regarding the Amended Complaint. First, the Amended Complaint typifies the sort of "shotgun pleading" that the Eleventh Circuit has long held worthy of summary dismissal. The undersigned has already discussed the role Rule 8(a)(2) plays in assessing the sufficiency of a federal complaint. The Eleventh Circuit has observed that "[c]omplaints that violate . . . Rule 8(a)(2) . . . are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). Although the Court of Appeals has recognized at least four loosely distinguished classes of "shotgun pleadings," *id.* at 1321-23, the "unifying characteristic of all types of shotgun pleadings is

that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.*

Minimally, the Amended Complaint is a "shotgun pleading" because it reflects this "unifying characteristic of all types of shotgun pleadings."  Essentially every cause of action presented in the Amended Complaint is alleged against "Defendants," meaning every Defendant, whether a county school board, an individual board member, a school district superintendent, or an employee of the high school where Plaintiff worked.  Such pleading precludes Defendants' ability to know what claims are leveled against them.  *See id.* at 1323 (identifying the fourth type of "shotgun pleading" as one committing the "relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against").  For instance, it is simply not possible that the school employee defendants, including assistant principals for RCHS, breached Plaintiff's employment contract with RCBOE.  Yet, Plaintiff alleges "the acts and omissions of Defendants constituted a breach of contract under Federal and State Laws." Doc. 49 at ¶ 64.  Because Plaintiff brings every claim against seemingly every Defendant, the Amended Complaint is a "shotgun pleading" deserving of summary dismissal.

In addition to the foregoing, the undersigned notes a more fundamental deficiency with the Amended Complaint.   The undersigned previously issued a thirty-page Recommendation describing the numerous pleading deficiencies in Plaintiff's original

complaint.  *See* Doc. 46.  Over and over again, the Recommendation highlighted Plaintiff's failure to plead sufficient factual matter to satisfy Rule 8.  The District Judge appears to have agreed with the undersigned's assessment of Plaintiff's original complaint.  *See* Doc. 48 at 3 (citing Doc. 46 at 8-29) ("To be sure, Plaintiff's complaint is rife with pleading deficiencies.").  But it appears to the undersigned that, in taking the "second bite at the apple" afforded by the District Judge, *see* Doc. 48 at 3, Plaintiff has failed to plead additional facts to "nudge" his various claims across the line from merely conceivable to plausible.

Apart from the omission of pertinent, non-favorable facts discussed previously in footnote one, *supra*, the only new well-pleaded allegation of fact the undersigned can glean from the Amended Complaint is Plaintiff's allegation that he was approached by a parent and informed "of a plan or conspiracy by female students to accuse Plaintiff of harassment and to report him to the School's administrators."  Doc. 49 at ¶ 23.  Essentially every other allegation of fact in the Amended Complaint was already presented, in one way or another, in the original complaint and was considered by the undersigned in issuing the prior Recommendation that found that Plaintiff had failed to state any claims upon which relief could be granted.  Plaintiff's lone new allegation of fact, even if accepted as true for purposes of the motions to dismiss, does not alter the undersigned's analysis of the sufficiency of Plaintiff's claims.  Indeed, as will be more fully discussed below, it actually supports Defendants' motions.  Thus, although the undersigned will again attempt to demonstrate why each of Plaintiff's claims fails under the pleading standards laid out

above, this Recommendation will borrow heavily from the prior Recommendation due to Plaintiff's confounding failure to plead the sort of factual material highlighted as lacking in the original complaint.

As noted above, Plaintiff sues a county school board and a number of individuals and presents multiple claims premised on both state and federal laws. The undersigned will first examine whether Plaintiff has stated any claim for relief under federal law before, if necessary, performing the same analysis as to any state law claims asserted in the complaint.

### A. Claims alleging violations of rights protected by federal law.

### 1. ADA Failure to Accommodate (Count I)

Plaintiff first claims that all Defendants "failed to provide reasonable accommodation to Plaintiff with disabilities" because Defendants "refused to clean or pay to have mold and mildew removed from his office[.]" Doc. 49 at ¶¶ 35-36. He claims "Defendants' actions and omissions, including their denial to provide reasonable accommodations to Plaintiff because of his medical condition due to his disabilities, are shocking and outrageous, and were undertaken with the intent to cause serious harm, and did cause the same." *Id.* at ¶ 37. He further claims he "has suffered humiliation, public ridicule, loss of employment, and emotional distress as a consequence of Defendants' actions and omissions." *Id.* He also claims he has "been consulting with a psychiatrist and psychologist since December 18, 2013 in relation to post-traumatic stress disorder, major

depressive disorder, and for recurrent episodes of severe and obsessive-compulsive disorder." *Id.* at ¶ 38.

Of course, it is difficult to find conceivable, much less plausible, how Plaintiff could possibly suffer humiliation, public ridicule, or the need to seek treatment for post-traumatic stress disorder, major depression, or severe obsessive-compulsive disorder due to Defendants' alleged failure to clean his office or have mold and mildew removed from the office. But, Plaintiff does not just oversell his injury with respect to his ADA failure-to-accommodate claim; he fails to even allege a plausible claim of a violation.

As the undersigned previously explained,

> [t]he ADA prohibits discrimination in employment on the basis of an employee's disability. Discrimination may include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee[.]" 42 U.S.C. § 12112(b)(5)(A).

Doc. 46 at 18. To succeed on a failure-to-accommodate claim under the ADA, Plaintiff will have to prove that "(1) he is disabled; (2) he is a qualified individual, meaning able to perform the essential functions of the job; and (3) he was discriminated against because of his disability by way of the defendant's failure to provide a reasonable accommodation." *Russell v. City of Tampa*, 652 F. App'x 765, 767 (11th Cir. 2016) (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001)). As such, "[i]n order to establish a claim under the ADA, a plaintiff must allege a disability." *Chapman v. U.S. Postal Serv.*, 442 F. App'x 480, 484 (11th Cir. 2011). Under the ADA, a "disability" is "a physical or mental impairment that substantially limits one or more major life activities of [the]

individual," "a record of such an impairment," or "being regarded as having such an impairment."  42 U.S.C. § 12102(1)(A)-(C).

The Amended Complaint is unclear as to what disabilities Plaintiff is alleging and how the failure to address his mold and mildew concerns could constitute a failure to accommodate his supposed disabilities.  He alleges he "has been diagnosed with lung inflammation (granulomas), allergies, osteoarthritis, and post-traumatic stress disorder[,]" but he describes these conditions as "ailments and disabilities."  Doc. 49 at ¶ 19.  As set forth above, whether a particular condition is a disability within the meaning of the ADA is a legal question.  As such, in order to state a plausible claim for a failure to accommodate under the ADA, Plaintiff may not simply allege that he has a disability.  To the extent Plaintiff does this, he presents only a legal conclusion entitled to no deference.  Rather, Plaintiff must minimally allege facts showing that his condition(s) is a "physical or mental impairment that substantially limits one or more major life activities[.]"  The Amended Complaint, like the original complaint, is devoid of any such allegations.

In addition, the Amended Complaint is devoid of any allegations permitting the reasonable inference that Plaintiff was discriminated against on the basis of his purported disabilities.  Plaintiff only alleges that he "made numerous requests for the carpet in his office to be replaced and the room to be cleaned of mold and mildew that aggravated his medical condition, namely lung inflammation (granulomas), allergies, degenerative disc disease of the lumbar spine, osteoarthritis, and post-traumatic stress disorder[,]" and that "Defendants" "refused to clean or pay to have mold and mildew removed from his

14

office[.]" Doc. 49 at ¶¶ 34, 36.   Of course, the Amended Complaint is entirely devoid of any allegations establishing a link between mold and mildew and the purported "aggravation" of Plaintiff's "ailments" of degenerative disc disease of the lumbar spine, osteoarthritis, and post-traumatic stress disorder.   Even if the court charitably presumes that mold and mildew could exacerbate Plaintiff's lung inflammation or allergies, the Amended Complaint is devoid of any factual allegations respecting Plaintiff's requests to remediate the mold and mildew as well as any Defendant's failure to accommodate his request.  Whom did Plaintiff ask to have his office cleaned?  What was their response?  Did any of the named Defendants, including Plaintiff's employer, know of his request and respond in any fashion?  Did Plaintiff make clear that his request to have the office cleaned related to a need to accommodate a disability?  Without additional factual detail tending to show that a Defendant actually knew of Plaintiff's purported disability, understood that Plaintiff's "requests" related to such disability, and yet willfully refused to take action to accommodate Plaintiff's disability, Plaintiff has failed to state a plausible failure-to-accommodate claim under the ADA.

In sum, Plaintiff fails to sufficiently allege that he suffers from any disability and that Defendants discriminated against him on the basis of any disability.   As such, Defendants' motions to dismiss Plaintiff's ADA failure-to-accommodate claim are due to be granted.

## 2.   Rehabilitation Act failure to accommodate (Count II)

Plaintiff next claims that Defendants' "refusing or failing to provide reasonable accommodations to Plaintiff because of his medical condition due to his disabilities in the provision of his employment and educational services" "totally disregarded the rights guaranteed to Plaintiff by Section 504 of the Rehabilitation Act of 1973 . . . which prohibits discrimination against qualified individuals, like Plaintiff with, disabilities by federal agencies, or programs or activities that receive federal financial assistance." Doc. 49 at ¶¶ 41, 42. As the undersigned explained in the prior Recommendation,

> In general, "[t]he federal Rehabilitation Act prohibits employers from discriminating against disabled persons." *Jackson v. Agency for Persons with Disabilities Florida*, 608 F. App'x 740, 741 (11th Cir. 2015) (citing 29 U.S.C. § 794(a)). "Discrimination claims brought under the Rehabilitation Act are governed by the same standard as claims brought under the [ADA]." *Id.* Thus, as with Plaintiff's ADA failure-to-accommodate claim, in order to state a claim under the Rehabilitation Act, Plaintiff must allege
>
>> "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability."
>
> *Royal v. Reese*, 24 F.Supp.3d 1243, 1246-47 (N.D. Ga. 2014) (quoting *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007)).

Doc. 46 at 20-21. Hence, for the same reasons that Plaintiff's ADA failure-to-accommodate claim fails, so to does his Rehabilitation Act claim. Plaintiff has failed to sufficiently allege that he suffers any disability, or that he has suffered any discrimination by any Defendant on the basis of a purported failure to accommodate his purported disability.

### 3.      Age Discrimination (Count III)

Plaintiff next alleges that he "is over the age of forty years, [and] believes and alleges that Defendants wrongfully terminated his employment at RCHS because of his age on the basis of student allegations that they never investigated and for which they never produced a report."  Doc. 49 at ¶ 49.  He claims these "acts or omissions" of Defendants "give rise to a claim for relief under the ADEA . . . which prohibits age discrimination." *Id.* at ¶ 50.  The only allegations Plaintiff musters in support of this claim are that RCBOE placed him on paid administrative leave while it investigated student allegations against him, that he believes he was eventually terminated, that he was not informed of such termination, and that Defendant Green "held no hearings or meetings to discuss the allegations against the Plaintiff, nor did he ever submit a report of the investigation to the Plaintiff[.]"  *Id.* at ¶¶ 46-48.

Plaintiff has not pleaded sufficient factual detail to proceed on a claim of unlawful age discrimination.   To begin with, Plaintiff's claim is internally inconsistent.  In the very allegation in which Plaintiff asserts his claim under the ADEA, he also alleges that his termination was "on the basis of student allegations that [Defendants] never investigated and for which they never produced a report."  *Id.* at ¶ 49.  Obviously, if Defendant was terminated on the basis of student allegations of improper conduct then, no matter how faulty or lacking was the investigation into those allegations, Plaintiff's termination was not the product of discrimination toward Plaintiff's age or any other protected characteristic.  In any event, to the extent that the Amended Complaint should be read as

alleging that Defendants' investigation into and eventual discipline for student complaints is merely pretext to provide cover for Defendants' desire to discriminate against Plaintiff due to his age, the claim still fails.   To succeed on a claim under the ADEA, a plaintiff will be required to show

> "(1) that she was a member of the protected group of persons between the ages of forty and seventy; (2) that she was subject to adverse employment action; (3) that a substantially younger person filled the position that she sought or from which she was discharged; and (4) that she was qualified to do the job for which she was rejected."

*Kragor v. Takeda Pharm. Amer., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (quoting *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999)). Here, even if the court assumes that Plaintiff may satisfy elements one, two, and four of his claim under the ADEA, nothing in the Amended Complaint permits the court to reasonably infer that "a substantially younger person" filled Plaintiff's position or that, otherwise, Plaintiff's age had anything to do with any adverse employment action taken against him by any Defendant.   There are no allegations in the Amended Complaint respecting who filled Plaintiff's position after he was placed on administrative leave or after he was no longer employed by RCBOE.   There are simply no allegations of any conduct toward Plaintiff indicative of any Defendant's animus toward Plaintiff because of his age.   Instead, the Amended Complaint appears to allege only that Plaintiff suffered an adverse employment action, that he is over the age of forty, and that he believes the adverse action was related to his age.   This is the quintessential example of insufficient pleading

18

under the pleading standard of *Twombly* and *Iqbal*.  As such, Plaintiff has failed to state

any claim upon which relief could be granted with respect to his claim under the ADEA.

### 4.      Race Discrimination (Count IV)

Relying on the same allegations concerning Defendants' investigation of the student

complaints against him, Plaintiff alleges as follows:

> Plaintiff, who is African American, believes and alleges that allegations and
> criminal charges levelled against him by RCHS female students involving
> sexual assault, harassing communication, and improper conduct were a
> pretext to discriminate against him and wrongfully terminate his employment
> at RCHS.

Doc. 49 at ¶ 55.  Plaintiff further alleges that

> Defendants treated him less favorably than other similarly situated non-
> African American teachers, including Pete Helms, a Caucasian teacher who,
> in the 2009/10 academic year, was placed on administrative leave without
> pay for five days for "inappropriate boundary invasion," but continued to be
> employed by the RCBOE, its employees, officials, and agents.

*Id.* at ¶ 56.  Based upon these allegations, Plaintiff asserts that "the acts and omissions of

Defendants RCBOE, Superintendent Green, and their employees, officials, and agents,

including Defendant Kirby and Johnson, give rise to a claim for relief under Title VII of

the Civil Rights Act of 1964[.]"  *Id.* at ¶ 57.

"Under Title VII, it is unlawful for an employer to discharge or discriminate against

any individual on the basis of his race, gender, or national origin."  *Patel v. Ga. Dep't

BHDD*, 485 F. App'x 982, 983 (11th Cir. 2012) (citing 42 U.S.C. § 2000e-2(a)(1)).  In

order to state a Title VII discrimination claim for which relief could be granted, Plaintiff

must allege sufficient factual information that, accepted as true, suggests that his claim that

he was terminated because of his race is more than just speculation on his part. *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)) ("Although a Title VII complaint need not allege fact sufficient to make out a classic *McDonnell Douglas* prima facie case, . . . it must provide 'enough factual matter (taken as true) to suggest' intentional race discrimination."). Under the prevailing *Twombly/Iqbal* standard,

> even if well-pled allegations are "consistent" with a defendant having subjected a plaintiff to adverse treatment for an unlawful reason, a complaint nonetheless is subject to dismissal for failure to state a claim where a discriminatory motive "is not a plausible conclusion" given an "obvious alternative explanation" that would render the defendant's objective conduct lawful. *Iqbal*, 556 U.S. at 681–82; *see also Twombly*, 550 U.S. at 567. In such circumstances, a plaintiff must "allege more by way of factual content to 'nudge' his claim of purposeful discrimination 'across the line from conceivable to plausible.'" *Id*., 556 U.S. at 683 (quoting *Twombly*, 550 U.S. at 570).

*Heard v. Hannah*, 51 F. Supp. 3d 1129, 1143 (N.D. Ala. 2014).

In addressing the insufficiency of Plaintiff Title VII race discrimination claim in the prior Recommendation, the undersigned noted the following with respect to Plaintiff's claim:

> In essence, Plaintiff alleges only that he was terminated because of his race and that Pete Helms and other unnamed white "teachers in similarly situated conditions were allowed to remain as a teacher and continued to be employed by the Defendants." Compl. (Doc. 1) at ¶ 12. Most importantly, the complaint is devoid of allegations respecting any act or conduct demonstrating racial animus against Plaintiff by any person, whether a named Defendant or otherwise. To the extent Plaintiff alleges he was treated less favorably than "non-black teachers in similarly [sic] situations who have also been alleged to have committed similar offense and continues to be employed by the defendants," Compl. (Doc. 1) at ¶ 24, it is not sufficient to allege broadly that other, unnamed employees outside Plaintiff's protected

class received more favorable treatment.[] *See Uppal v. Hosp. Corp. of Am.*, 482 F. App'x 394, 396 (11th Cir. 2012); *Davis*, 516 F.3d at 974.  Thus, apart from Plaintiff's allegation respecting Mr. Helms, there simply is no well-pled factual allegation that is both free of unwarranted legal conclusions and tends to show that Plaintiff's racial discrimination claim is anything more than wild speculation on Plaintiff's part.

Insofar as Plaintiff does allege that a specific white individual, Mr. Helms, received more favorable treatment than he, his claim still falls short. First, merely naming a purported comparator outside of Plaintiff's protected class is not, alone, sufficient to state a Title VII discrimination claim.  *See, e.g., McCray v. Auburn Univ. Montgomery*, Civ. No. 2:11-cv-714-WHA, 2011 WL 6140993, at *4 (M.D. Ala. Dec. 8, 2011).  Rather, because alleging that a particular person is "similarly situated" is a legal conclusion, Plaintiff must allege sufficient plausible factual details permitting the reasonable inference that the purported comparator is indeed similarly situated.  Here, Plaintiff fails to allege the character and content of the misconduct charges allegedly leveled against Mr. Helms, whether and how the charges were investigated and adjudicated, whether Mr. Helms was also subject to criminal prosecution for his alleged misconduct and was indeed so prosecuted, whether Mr. Helms also agreed to resign his position in a state criminal court, and whether and how Mr. Helms ultimately was punished by their mutual employer.[]  Accordingly, the complaint lacks sufficient detail to reasonably conclude that Plaintiff and Mr. Helms similarly situated.  Because the complaint is entirely devoid of any other factual allegation making plausible Plaintiff's claim that he was terminated because of his race, the undersigned cannot conclude that Plaintiff has adequately stated a Title VII claim for racial discrimination which satisfies the applicable *Twombly/Iqbal* standard.

Finally, as the court has discussed in conjunction with Plaintiff's other claims, Plaintiff's complaint makes clear what is the real reason for any adverse employment action about which he complains: Plaintiff was subject to employment discipline, and indeed was subject to criminal prosecution, because of his alleged improper interactions with students.  Moreover, there is nothing in the complaint which makes plausible Plaintiff's apparent charge that the misconduct allegations themselves were the product of a wide-ranging conspiracy against Plaintiff based on racial or other discriminatory animus.  Where the complaint makes clear that, rather than discriminatory animus, there is an "'obvious alternative explanation,'" *Heard*, 51 F. Supp. 3d at 1143 (quoting *Iqbal*, 556 U.S. at 682), for the alleged adverse employment action—even if presumed incorrect or untrue—and that such "obvious alternative explanation" is indeed the only plausible explanation

permitted by the complaint, the court is justified in concluding that a Title VII plaintiff has failed to state a claim. *See, e.g., Glover v. Donahoe*, 626 F. App'x 926, 931 (11th Cir. 2015) (emphasis in original) (upholding district court's order dismissing complaint for failure to state a claim because, "[v]iewing the factual allegations in the amended complaint in the light most favorable to Glover, the USPS terminated Glover's employment based on false accusations by a black woman and a black witness that Glover used a racial slur and other offensive language while Glover was delivering mail. In other words, Glover's employment was terminated because of a customer complaint about Glover's conduct, *not* because of Glover's race."); *Heard*, 51 F. Supp. 3d at 1143-44 (citing *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1363 n.3 (11th Cir. 1999)) (dismissing Title VII race discrimination claim for failure to state a claim because "the Amended Complaint and the materials attached thereto also suggest that Hannah fired Plaintiff based upon an investigation revealing that he had been accused by multiple, identified women of making threats designed to coerce them into supplying sexual favors to avoid arrest or to receive more favorable treatment while in custody[,]" and finding that Plaintiff's contention that the alleged misconduct was "'false,'" "'unfounded,'" and "'non-verified,'" was irrelevant to question of whether Plaintiff had stated a claim for discrimination).

Doc. 46 at 25-29 (footnotes omitted).  Unfortunately, the Amended Complaint cures none

of the defects identified in the prior Recommendation.  Plaintiff still has alleged no facts

making plausible his claim that any adverse employment action against him was because

of his race.  Instead, Plaintiff has simply repeated the same allegations about a purportedly

deficient investigation into allegations against him and paired them with the same

allegations about unspecified "similarly situated non-African American teachers" who

received more favorable treatment.   As the undersigned previously explained, that is

insufficient to state a claim.  Furthermore, Plaintiff has again failed to offer sufficient well-

pleaded allegations with respect to his claim that Mr. Helms was treated more favorably

than Plaintiff for similar alleged misconduct.   There are no allegations respecting the

conduct of Mr. Helms and how it compared to that alleged against Plaintiff.  There are no allegations that Mr. Helms had been the subject of multiple charges of similar misconduct over a period of several years.  There are no allegations that Mr. Helms was arrested and prosecuted on multiple charges for his alleged "inappropriate boundary invasion."  And, as the undersigned previously observed, documents attached to Plaintiff's first complaint make clear that Plaintiff was placed on paid administrative leave until he agreed to resign his position in open court in an effort to resolve criminal charges against him.  The complaint alleges that Mr. Helms was similarly placed on paid administrative leave for a short period based upon his alleged misconduct.  In short, given the insufficient allegations permitting a reasonable inference that Mr. Helms was indeed similarly situated with Plaintiff, combined with the abject lack of any other well-pleaded allegation tending to show that anything that happened to Plaintiff was due to his race, the undersigned is again compelled to conclude that Plaintiff has not alleged sufficient facts to proceed on a claim of Title VII race discrimination.

Finally, the lone new factual allegation in the Amended Complaint only buttresses the previous Recommendation's conclusion that, rather than making plausible Plaintiff's claim of race discrimination, Plaintiff's factual allegations actually indicate that a "discriminatory motive 'is not a plausible conclusion' given an 'obvious alternative explanation' that would render the defendant's objective conduct lawful."  Doc. 49 at 23 (quoting *Heard*, 51 F. Supp. 3d at 1143 (quoting *Iqbal*, 556 U.S. at 681–82)).  That is, Plaintiff's new allegation that a parent met with him to inform him "of a plan or conspiracy

23

by female students to accuse Plaintiff of harassment and to report him to the School's administrators," and that the parent's child "was solicited by unnamed students to make the accusations of harassment against Plaintiff" only makes clear that Defendants' actions were based on actual student complaints—even if they were contrived and the result of a conspiracy among the students—rather than Plaintiff's race, or his age, or his purported disabilities, or his purported previous complaints about RCHS's handling of separate personnel matters.  There is simply no well-pleaded allegation in the Amended Complaint that any Defendant participated in any way in the alleged conspiracy of several female students to charge Plaintiff with sexual misconduct or harassment, much less that any Defendant did so because of Plaintiff's race.  Instead, the well-pleaded allegations of the Amended Complaint establish only that students actively conspired to make such charges and solicited others to join them.[2]  As such, the Amended Complaint amply demonstrates that race discrimination "is not a plausible conclusion" for any adverse employment action against Plaintiff.  Instead, the Amended Complaint makes clear an "obvious alternative explanation"—the need to investigate several students' reports of misconduct involving

---

[2]  Plaintiff does appear to allege, in support of his "Retaliation" cause of action, that he "believes and alleges that Defendants conspired with Human Resources and the Russell County Sheriff's Office to cause female students to file charges against him in an effort to terminate his employment."  Doc. 49 at ¶ 71.  This is not a well-pleaded allegation of fact.  Plaintiff does not allege which Defendant or Defendants "conspired" with "Human Resources," the Sheriff's Department, or the minor students to lodge allegations against him.  It is simply implausible that all Defendants, including every individual RCBOE board member, did so.  More to the point, though, Plaintiff's conclusory allegation of a conspiracy, without any supporting facts, is specifically rejected in *Twombly*.  *See* 550 U.S. at 557.  Plaintiff simply must plead more facts in order to make plausible any claim that "Defendants" conspired with students and others to fabricate a basis for terminating him.

Plaintiff which resulted, ultimately, in Plaintiff's multiple arrests and criminal prosecutions, albeit with no final criminal conviction related to the students' allegations.

For all of the foregoing reasons, the undersigned again concludes that Plaintiff has failed to allege sufficient facts to state a claim for Title VII race discrimination that is plausible on its face. Accordingly, Defendants' motions to dismiss Plaintiff's Title VII race discrimination claim are due to be granted.

### 5.    Retaliation (Count VI)

Plaintiff next claims that Defendants unlawfully retaliated against him. He alleges he was retaliated against for several reasons, including the following: because he escaped criminal conviction on the 2004 and 2006 misconduct allegations described previously (Doc. 49 at ¶ 67); "because he had opposed an unlawful conduct in not taking action against a teacher who used racial slurs against African American teachers and students, and the mistreatment of African American teachers and students, including Plaintiff who complained about being treated less favorably than Caucasian teachers at RCHS" (*id.* at ¶ 68); because he "requested reasonable accommodations in terms of the removal of mold and mildew from his office at RCHS" (*id.* at ¶ 69); and for "speaking out against Shawn Taylor, a Caucasian teacher at RCHS, for his abuse of an African American student" (*id.* at ¶ 72). Plaintiff expressly alleges retaliation theories under Title VII and the Rehabilitation Act of 1973, *see id.* at ¶ 73, while also appearing to allege a claim for unlawful retaliation under the ADA. *Id.* at ¶ 69.

Plaintiff's Amended Complaint presents the same theories of retaliation, with essentially identical supporting factual allegations, as did the original complaint. Accordingly, the undersigned here reproduces the previous Recommendation's analysis of Plaintiff's retaliation claims.

> The court first considers Plaintiff's theory of Title VII retaliation. Title VII prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).
>
>> To state a claim for retaliation under Title VII, a plaintiff must allege the following elements: (1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse action. *Pipkins v. City of Temple Terrace*, 267 F.3d 1197, 1201 (11th Cir. 2001).
>
> *Arafat v. Sch. Bd. of Broward Cty.*, 549 F. App'x 872, 874 (11th Cir. 2013).
>
> With regard to any claim for retaliation under Title VII, the undersigned finds that Plaintiff has failed to state a claim upon which relief could be granted because Plaintiff's allegations, at most, consist of only the sorts of labels and conclusions which, under the standard of *Twombly* and *Iqbal*, are insufficient to state a claim. First, there are no factual allegations suggesting a causal relationship between any adverse employment action Plaintiff suffered and his "acquittal" of alleged misconduct charges in 2004 and 2006. Nor can the court conclude that being acquitted of charges of wrongdoing is itself statutorily protected activity within the meaning of Title VII. Second, the court cannot conclude that Plaintiff's purported "opposition" to another teacher's use of a racial slur directed at African-American teachers or students, without more, somehow constitutes opposition to an unlawful employment practice of his employer. *See, e.g., Little v. United Techs*, 103 F.3d 956, 961 (11th Cir. 1997) (concluding, "a racially derogatory remark by a co-worker, without more, does not constitute an unlawful employment practice under the opposition clause of Title VII, . . . and opposition to such a remark, consequently, is not statutorily protected conduct").

26

Even if the court presumes that Plaintiff's "opposition" to another teacher's use of racial slurs, or his purported complaints—without any supporting factual detail—about being treated less favorably than Caucasian teachers, could constitute opposition to an unlawful employment practice by his employer, Plaintiff's allegations remain factually deficient. Plaintiff is required to plead that he engaged in statutorily protected activity regarding an unlawful practice of his employer. The most the complaint says is that Plaintiff "opposed the treatment of an African-American student with racial biases by the Defendants," and that he "opposed" Defendants' purported "mistreatments of African-American teachers and students[.]" Compl. (Doc. 1) at ¶¶ 18, 21. There are no allegations detailing the treatment or "mistreatments" of African-American students or teachers, or the more favorable treatment afforded Caucasian teachers. More importantly, there are no factual allegations as to the nature of any complaint or "opposition" raised by Plaintiff, to whom he complained or raised objections about such treatment, or even whether and how Plaintiff's employer was actually made aware of Plaintiff's complaints or "opposition." Without allegations better clarifying how and when Plaintiff engaged in purported statutorily protected conduct, the undersigned cannot conclude that Plaintiff has sufficiently alleged a claim for retaliation.

Finally, as the documents attached to Plaintiff's complaint and the public records previously discussed make clear, any adverse action taken against Plaintiff was, without doubt, attributable to the alleged misconduct committed by Plaintiff, which has, for the time being, resulted in a criminal conviction for harassment. While Plaintiff appears to argue that Defendants may have failed to adequately investigate this charge of misconduct, there are no facts alleged in the complaint which plausibly suggest or allow the reasonable inference that Plaintiff's termination or any other adverse action was retaliation for his vague "opposition" to perceived discrimination rather than because of the allegations of misconduct lodged against him. As such, the court finds that Plaintiff's factual allegations with respect to this element of his claim are insufficient and, consequently, Plaintiff has failed to state a claim upon which relief could be granted for retaliation in violation of the provisions of Title VII.

Doc. 46 at 13-15.

Plaintiff's Amended Complaint wholly fails to cure these deficiencies. He does not

allege how his avoidance of criminal convictions in 2004 and 2006 could somehow

constitute protected activity within the meaning of Title VII.  He also does not allege the existence of any fact making plausible a causal connection between his employer's actions in 2013 and his avoidance of criminal convictions on misconduct charges nearly seven years earlier.  He does not allege any facts clarifying his supposed "opposition" to his employer's treatment of other teachers or his complaints about his treatment relative to Caucasian teachers at RCHS, such that the court can reasonably infer that he actually engaged in protected activity within the meaning of Title VII.  What employment practice did Plaintiff oppose or complain about?  When and to whom did he voice his opposition or complaints?  What was the content of his opposition or complaints?  Did his employer know of his opposition or complaints?  When?  Similarly, there are no allegations permitting the reasonable inference that Plaintiff's alleged "speaking out" about the actions of Shawn Taylor constituted protected conduct or that the treatment of Shawn Taylor somehow constitutes an employment action by Plaintiff's employer.  Finally, what facts plausibly suggest that any of Plaintiff's vague "opposition," "complaining," or "speaking out" is causally connected to the adverse employment actions about which he complains?  Plaintiff pleads no facts suggesting a close temporal proximity between any of his purported protected activity and any adverse employment action, and there are simply no other well-pleaded allegations of fact tending to suggest a causal connection in the absence of temporal proximity.

In short, even after the undersigned's previous explication of how Plaintiff's original complaint fell well short of stating any plausible claim of retaliation under Title

VII, the Amended Complaint is likewise utterly devoid of the sort of factual allegations that could make Plaintiff's claim plausible.  Thus, Plaintiff has failed to state any claim for Title VII retaliation for which relief could be granted.

To the extent Plaintiff again presents a claim of retaliation under the ADA and/or the Rehabilitation Act of 1973, the Amended Complaint still fails to state a claim upon which relief could be granted.  As the undersigned previously observed,

> [l]ike Title VII,
>
> [t]he ADA prohibits discrimination against an individual on the basis of such individual's opposition to an unlawful act under the ADA or because that individual made a charge under the ADA.  42 U.S.C. § 12203(a).  To establish a prima facie case of retaliation, [a plaintiff] must allege that "(1) [s]he engaged in a statutorily protected expression; (2) [s]he suffered an adverse employment action; and (3) there was a causal link between the adverse action and h[er] protected expression." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260 (11th Cir. 2001).
>
> *Smith v. Miami-Dade Cty.*, 621 F. App'x 955, 959-60 (11th Cir. 2015).  As in the Title VII context, "statutorily protected expression" means, broadly, opposition to "any act or practice made unlawful" by the ADA.  42 U.S.C. § 12203(a).

Doc. 46 at 16.

Here, Plaintiff only alleges that "Defendants retaliated against him when he requested reasonable accommodation in terms of the removal of mold and mildew from his office at RCHS."  Doc. 49 at ¶ 69.  Plaintiff does not allege that he engaged in any protected expression concerning Defendants' purported failure to "accommodate" him. Plaintiff thus appears to conflate his ADA retaliation claim with his (insufficient) ADA

29

discrimination claim.  In any event, assuming that an unfulfilled request to accommodate a purported disability may also constitute protected activity for purposes of the anti-retaliation provisions of the ADA, the complaint is devoid of any allegations tending to make this claim plausible.  Plaintiff does not allege to whom he made the request for an accommodation.  He does not allege who refused to accommodate him.  He does not allege that his employer—the RCBOE—knew of any such request at the time of any adverse employment action.  And, most importantly, Plaintiff does not allege any well-pleaded fact permitting the reasonable inference that any adverse employment action against Plaintiff had anything to do with his request for a reasonable accommodation rather than the allegations of sexual misconduct lodged against him by several students.

Plaintiff has failed to allege sufficient facts in support of his claim for retaliation under both the ADA and the Rehabilitation Act of 1973.  Accordingly, Defendants' motions to dismiss such claims are due to be granted.

### 6.    Violation of Due Process (Count VII)

The final arguably federal cause of action in the Amended Complaint is Plaintiff's claim that the "acts or omissions of the Defendants violated his due process rights[.]"  Doc. 49 at ¶ 79.  The factual allegations underpinning this claim are, again, that Plaintiff was placed on paid administrative leave because of students' allegations against him, that he was never informed of his termination by Defendants, and that Defendants never met and discussed with Plaintiff the allegations against him or "produced or submitted a report of the investigation to Plaintiff."  *Id.* at ¶¶ 76-78.  Plaintiff thus claims that his "due process

rights" were violated, "including his right to appeal and review of decisions taken against him by the RCHS, as guaranteed to him by the Fourteenth Amendment to the United States Constitution." *Id.* at ¶ 79.

The Amended Complaint does not appear to specifically allege a violation of Plaintiff's substantive due process rights. To the extent he intended to present such a claim, in the previous Recommendation the undersigned explained why he fails to present a claim for which relief could be granted. *See* Doc. 46 at 8-10. As the undersigned concluded in that Recommendation, "'pretextually terminated employees'—i.e., persons, like Plaintiff, complaining that they were terminated due to the discriminatory animus of their employer—cannot bring substantive due process claims based on their termination. Rather, 'only procedural due process claims are available to pretextually terminated employees.'" *Id.* at 10 (quoting *McKinney v. Pate*, 20 F.3d 1550,1560 (11th Cir. 1994)).

To the extent the Amended Complaint presents only a procedural due process claim, it likewise remains insufficient for the reasons discussed in the previous Recommendation. In order to state a claim for deprivation of his procedural due process rights, Plaintiff "must sufficiently plead three elements: (1) deprivation of a constitutionally protected interest; (2) state action; and (3) constitutionally inadequate process." *Martin v. Houston*, 176 F. Supp. 3d 1286, 1303 (M.D. Ala. 2016) (citing *Arrington v. Helms*, 438 F.3d 1336, 1347 (11th Cir. 2006)). Although very vague, it appears the only due process rights Plaintiff claims he was denied in the Amended Complaint were "his right to appeal and review of decisions taken against him by the RCHS[.]" Doc. 49 at ¶ 79. The "decisions" that Plaintiff

31

believes he was entitled to "appeal" and have "reviewed" appear to be Defendant Green's placement of Plaintiff on paid administrative leave and RCBOE's purported decision to terminate his employment. *See id.* at ¶¶ 76-77.

As the undersigned previously noted, Alabama law provides any property interest Plaintiff had in his continued employment and also establishes the procedure to which Plaintiff was due with regard to his employer's decisions respecting his employment. *See* Doc. 46 at 11-12. Thus, any constitutionally protected interest that Plaintiff claims he was denied flows from Alabama law. Alabama law specifically addresses both decisions to place employees on paid administrative leave, which requires only that the executive officer do so "in the exercise of sound administrative discretion," Ala. Code § 16-24C-9, and decisions to terminate tenured employees. Alabama law expressly does not afford a teacher the right to notice or a hearing prior to a placement on paid administrative leave. *See id.* As such, there is no constitutionally protected interest in not being placed on paid administrative leave for which Plaintiff could claim a deprivation of his procedural due process rights. Thus, to the extent he attempts to do so, he has failed to state any claim upon which relief could be granted for a due process violation related to his placement on paid administrative leave.

With respect to decisions to terminate employment, Alabama law affords procedural protections that implicate constitutional due process, including notice and an opportunity to be heard, and the right to appeal any decision. *See* Ala. Code § 16-24C-6(b)-(e). However, Alabama law also affords process for tenured employees who, like Plaintiff,

complain that they were denied a hearing on any decision to terminate their employment. *See* Ala. Code § 16-24C-12.  This process includes the right to "appeal for relief directly to the Chief Administrative Law Judge of the Office of Administrative Hearings," and to petition for relief from any decision of the administrative law judge in the "circuit court of the county in which the principal administrative offices of the employer are located." *Id.*

Against this backdrop, Plaintiff's procedural due process claim related to his purported termination remains insufficient.  As the undersigned previously explained, "it is not clear—despite Plaintiff's conclusory allegation otherwise—that Plaintiff was actually terminated by Defendant.  He remained on paid administrative leave until he agreed in open court to resign his position in order to dispose of criminal charges against him."  Doc. 46 at 11.  Nevertheless, even assuming the truth of Plaintiff's allegation that he actually was terminated, Plaintiff still does not allege that any of the process available to him was constitutionally inadequate, including the right to appeal any purported decision to terminate him without providing for a hearing.  *See, e.g., Horton v. Board of Cty. Comm'rs of Flagler Cty.*, 202 F.3d 1297, 1300 (11th Cir. 2000) ("[T]he process a state provides is not only that employed by the board, agency, or other governmental entity whose action is in question, but also includes the remedial process state courts would provide if asked.").  Thus, there is no allegation in the Amended Complaint that the remedies for any purported deprivation provided by Alabama law fail to satisfy the requirements of procedural due process.  *See, e.g., Foxy Lady, Inc. v. City of Atlanta, Ga.*, 347 F.3d 1232, 1238 (11th Cir. 2003) ("[E]ven if a procedural deprivation exists during an

administrative hearing, such a claim will not be cognizable under § 1983 if the state provides a means by which to remedy the alleged deprivation."); *Laskar v. Peterson*, 771 F.3d 1291, 1300 (11th Cir. 2014) ("[E]ven if a plaintiff suffered a procedural deprivation at his administrative hearing, there is no procedural due process violation if the state makes available a means to remedy the deprivation.").  As the undersigned previously concluded, "[w]ithout some allegation that the process available to him by law was inadequate, Plaintiff has failed to state a claim upon which relief could be granted for any purported violation of his procedural due process rights."  Doc. 46 at 12.

Plaintiff only vaguely alleges that he was denied "his right to appeal and review of decisions taken against him by the RCHS[.]"  Doc. 49 at ¶ 79.  But Plaintiff does not allege that he attempted to avail himself of the legal remedies available to him under Alabama law, including his right to file an administrative appeal or thereafter seek judicial relief, or that such legal remedies were unavailable or inadequate.  Accordingly, Plaintiff has not plausibly alleged the existence of any constitutionally inadequate process, and the undersigned is once again compelled to conclude that Plaintiff has failed to state any claim of a procedural due process violation for which relief could be granted.

### B.  Claims Predicated on Violations of State Law

In addition to his claims premised on violations of federal law, Plaintiff purports to bring several claims alleging violations of state law by Defendants in the Amended Complaint, including "Breach of Contract" (Count V), *see* Doc. 49 at ¶ 64, "Defamation" (Count VIII), *see id.* at ¶ 85, "Malicious Prosecution and Abuse of Process" (Count IX),

*see id.* at ¶ 90, and "Intentional Infliction of Emotional Distress" (Count X), *see id.* at ¶ 93.

Defendants argue that Plaintiff's state law claims should be dismissed for failure to state a claim upon which relief could be granted. While it appears that Plaintiff's state law claims are likely encumbered with the same pleading deficiencies afflicting his federal claims, the undersigned believes that, because all of Plaintiff's federal law claims are subject to dismissal for failure to state a claim upon which relief could be granted, this court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3). *See Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (encouraging "district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial."). Accordingly, Plaintiff's state law claims should be dismissed without prejudice.

## IV.   CONCLUSION

For all of the reasons stated above, the Magistrate Judge RECOMMENDS as follows:

a.      that Defendants' Renewed Motions to Dismiss (Docs. 50 and 53) be GRANTED to the extent such motions seek dismissal of Plaintiff's federal law claims pursuant to Rule 12(b)(6) due to Plaintiff's failure to state any claim upon which relief could be granted; and

b.      that Plaintiff's state law claims be DISMISSED without prejudice pursuant to 28 U.S.C. §1367(c)(3).   It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **September 15, 2017**.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1; *see Stein v. Lanning Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*).  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Done this 1st day of September, 2017.


/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE